**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AZZA ZAKI<br>6533 Pallisades Drive<br>Centerville, VA 20121<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL R POMPEO<br>SECRETARY OF STATE<br>U.S. DEPARTMENT OF STATE<br>600 19th Street, NW, Suite 5.600<br>Washington, DC 20522<br><br>    Defendant, | )<br>)<br>)<br>)<br>)<br>)  Case No:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Azza Zaki, by way of her counsel, Morris E. Fischer, herein brings action for actions taken against her by the Defendant, Secretary of State, U.S. Department of State ("State Department," "Defendant" or "Agency"), in violation of Title VII, 42 U.S.C. § 2000e *et seq.*,.

## PARTIES

1. Plaintiff, Azza Zaki, is an employee of the U.S. Department of State.

2. Defendant is the Secretary of the U.S. Department of State, named in her official capacity pursuant to 42 U.S.C. § 2000e-16.

3. Defendant does business and is located in Washington, D.C.

4. Defendant is properly named as the head of the Agency pursuant to 42 U.S.C. § 2000e-16(c).

## JURISDICTION

5. The action arises under Title VII, 42 U.S.C. § 2000e, *et seq.*, which prohibits discrimination against employees based on religion.

6. Defendant does business at the United States Department of State, 600 19th Street, NW, Suite 5.600, Washington, DC 20250.

7. All of the necessary administrative prerequisites have been met prior to filing the instant action, as Plaintiff has filed timely complaints of discrimination with her federal employer, the State Department and brings her action after 180 days since Plaintiff filed her formal administrative complaint, on or about August 9, 2017.

8. On or about April 18, 2019, the Agency issued a Final Agency Decision, regarding Ms. Zaki's first EEO complaint.

9. The District of Columbia is where the actions complained of in the present case took place, where the employment records relevant to the unlawful practices are kept by the Defendant.

10. Therefore, the court has jurisdiction over these claims under 42 U.S.C. § 2000e–5 & –16 (2012).

11. Defendant resides in the judicial district, and a substantial part of the events giving rise to the action took place within the judicial jurisdiction.

12. Therefore, the court has proper venue pursuant to 29 U.S.C. § 1391 (2012).

## FACTS

13. Mr. Zaki began her employment with the State Department in 1984 as a GS-4.

14. Ms. Zaki was eventually promoted to a GS-12 Program Analyst.

15. Plaintiff is a Muslim-American.

16. Plaintiff faithfully practices the Muslim religion.

17. Plaintiff fasts every year during the Muslim month of Ramadan.

18. As per the Muslim religion, devout Muslims fast from sunrise to sundown every day during Ramadan for 30 days.

19. Plaintiff fasts regularly during the month of Ramadan as part of her devout service to Islam.

20. In January 2017, Plaintiff began her new position at the State Department in the Bureau of Educational and Cultural Affairs' Public-Private Partnerships, Office of Private Sector Exchange Administration (OPA).

21. Plaintiff was assigned to the Au Pair program where she was responsible for the administration of Au Pair complaints against their sponsors for mistreatment.

22. Ramadan started May 26, 2017 and went to June 25, 2017.

23.  Sufficiently prior to Ramadan, Plaintiff had asked management to telework during Ramadan as a reasonable accommodation.

24. Teleworking during Ramadan would have made the fasting significantly easier for Plaintiff.

25. During 2017, Plaintiff's first line supervisor was Darra Dirska.

26. During 2017, Plaintiff's second line supervisor was Henry Scott.

27. Prior to Ramadan, 2017, Plaintiff put in for a request to telework twice a week during Ramadan.

28. The aforesaid telework was approved on a trial basis.

29. For seven years prior to 2017, Plaintiff's telework requests for Ramadan were always honored.

30. On June 1, 2017, Darra Dirska was on leave.

31. The leave that Ms. Dirska was on was less than a month of time.

32. Sabrina Holly assumed the role of acting chief.

33. On June 2, 2017, Sabrina Holly, Henry Scott and Plaintiff met to clear up a discrepancy between the cases that Plaintiff logged and those appearing in the database.

34. Plaintiff was asked by Sabrina Holly how many cases she had logged.

35. Plaintiff mixed up the term "log" in that she listed a number representing the total number of cases in which she had enough information to begin a file, rather than the total number of cases in which all of the information was gathered to complete a complaint intake.

36. Based on that one response Plaintiff gave to the aforesaid question, aforesaid managers took away Plaintiff's teleworking privileges during the last two weeks of Ramadan.

37. The managers did not criticize any of the substance of Plaintiff's work in May or June of 2017.

38. Neither Scott nor Holly based their decision to remove Plaintiff's telework during Ramadan on any of the substance of Plaintiff's work.

39. At the same meeting, Henry Scott suggested that Plaintiff be placed on a Performance Improvement Plan ("PIP").

40. Henry Scott later admitted that his suggestion that Plaintiff be placed on a PIP was a mistake.

41. Henry Scott and Darra Dirska said they denied the last two weeks of Ramadan telework because Azza Zaki was new to the office and in training and not performing at a level that would meet the telework requirement.

42. Management's said decision was based entirely on a terminology issue, rather than on any work performance issues.

43. Management could have simply clarified to Plaintiff the term "log" and continued to allow her to telework during the remaining two weeks of Ramadan.

44. Plaintiff's job could have been performed while teleworking from her home.

45. Plaintiff could have performed her job duties while teleworking during the remaining two weeks of Ramadan.

46. The Agency could have supervised Plaintiff from her home for two weeks while she was teleworking.

47. Plaintiff's supervisors could have answered whatever questions Plaintiff had during the last weeks of Ramadan either by phone or by logging onto Plaintiff's computer screen to illustrate to Plaintiff what she needed to know.

48. During the last two weeks of Ramadan, when Plaintiff didn't telecommute, she didn't receive any additional training.

49. During the last two weeks of Ramadan, when Plaintiff didn't telecommute, she didn't receive any additional training that she couldn't have received at home while teleworking.

50. Henry Scott denied no other telework to any other employee.

51. Darra Dirska was aware that Plaintiff was a Muslim.

52. Henry Scott was aware that Plaintiff was a Muslim.

53. Darra Dirska and Henry Scott told Azza Zaki remaining two weeks of Ramadan, not approved. was reminded that Telework was a privilege and that new employees have to wait until they gain their telework privileges.

54. Plaintiff suffers from Rheumatoid Arthritis, trochantic bursitis, knee osteoarthritis.

55. Said conditions make it very difficult for Plaintiff to commute to work.

56. Darra Dirska was aware of Plaintiff aforesaid conditions.

57. Henry Scott was aware of Plaintiff's aforesaid conditions.

58. The agency provided her DPP parking.

59. DPP parking is an accommodation for a disability.

60. The agency perceived Plaintiff as disabled by virtue of granting her a special handicap parking space.

61. Early in 2017, Plaintiff asked for a reasonable accommodation of teleworking one day a week due to her disability, but she was denied.

62. On June 13, 2017, Darra Dirska showed Henry Scott Summary report of Azza Zaki's complaints, which included discrimination complaints.

63. On June 14, 2017, Plaintiff requested EEO Counseling.

64. On June 23, 2017, Henry Scott became aware that Plaintiff filed an EEO complaint against him.

65. Sometime in June, 2017, Henry Scott and Darra Dirska were contacted by the EEO Counselor regarding Plaintiff's EEO case.

66. On August 10, 2017, Plaintiff filed her EEO formal complaint.

67. Between March 2017 and the present, Plaintiff has been subjected to ridicule including but not limited to harassing emails, being accused of playing video games on her phone at work, not given real training despite her numerous requests, eye rolling, dirty looks, huffing and puffing when she spoke, being overly criticized about her work product, not having her questions answered, being laughed at during meetings, being threatened with Performance Improvement Plans, being told that a Performance Improvement Plan would be helpful for her career, being told she wasn't the "right person for the job."

68. In addition, on May 24, 2017, Azza Zaki had to pick up a debit card from SA-1. This was in a different location than where she typically worked. She missed the 12 pm shuttle back from the SA-1 building to her work site. Plaintiff notified her supervisors that she had missed the earlier shuttle, was going to take lunch and come back on the 1 pm. Shuttle. Ms. Holly was hostile to her, accusing her of purposely missing the earlier shuttle to avoid work.

69. Plaintiff was also accused of poor attendance, along with coming to work late and leaving early.

70. In 2018, Ramadan fell out between May 15, 2108 and June 14, 2018.

71. Plaintiff put in a request to telework two days per week during Ramadan for 2018.

72. After approving the telework for Ramadan, 2018, Henry Scott called for a meeting with Plaintiff and Darra Dirska.

73. At said meeting, Scott and Dirska directed that Plaintiff send her team an email stating: (a) she will be teleworking on Tuesdays and Thursdays; (b) she will be taking work home with her if the system is down and she cannot log in; (c) she understands that if she is too tired and sleepy she must go ahead and log off and her annual leave will be approved without questions; and (d) she has to send an email when she will log on and off.

74. In May of 2018, about 75%-80% percent of Scott's staff teleworked.

75. No other employee had to do this aforementioned procedure when teleworking.

76. Plaintiff has filed a formal EEO complaint, DOS -0263-17 which listed a hostile environment as a continuing claim.

77. More than 180 days have passed since Plaintiff filed that formal complaint.

78. The additional actions that Plaintiff suffered from were part of the same hostile work environment claim.

## COUNT I
## HOSTILE WORK ENVIRONMENT

79. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

80. Plaintiff is a member of the statutorily protected class, Muslim and Egyptian-American.

81. Plaintiff was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class;

82. The harassment complained of was based on the statutorily protected class;

83. The harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment.

84. The harassment was objectionably hostile, intimidating and demeaning.

85. The harassment was subjectively hostile, intimidating and demeaning.

86. Other co-workers outside of Plaintiff's protected were not treated in this manner.

87. Plaintiff complained about the treatment to her supervisors and to the EEO office.

88. While Plaintiff's managers ultimately granted two of her religious accommodations, the conditions attached to them were so unjust and singled out Plaintiff based on her religion.

89. Requiring the Plaintiff to send an email to her team that if fasting on Ramadan, a private religious practice, causes here weakness, she will sign off is an unreasonable invasion of an employee's religious privacy.

90. It's absolutely nobody's business to know if Plaintiff is weak or strong during a Ramadan fast day.

91. Plaintiff's job did not require her participation in team projects with her co-workers.

92. Such a requirement also disparages Islam because it presupposes and implicitly suggests that Ramadan is a religious impediment to successfully holding down a job.

93. The entire point of the accommodation is that Plaintiff was able to perform the essential functions of her position, teleworking twice a week.

94. Because of their unlawful conduct, Ms. Zaki suffered monetary damages, mental anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

## COUNT II
## RELIGIOUS DISCRIMINATION

95. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

96. Plaintiff's religion was a motivating factor for management taking away her telework rescinded for the last two weeks of Ramadan 2017.

97. Defendant's reasons for removing same were pretextual.

98. Defendant treated Plaintiff far worse than Plaintiff's co-workers not in Plaintiff's protected class.

99. Employees who were teleworking and not keeping Ramadan (non-Muslims) didn't have the requirement of notifying their supervisors when they felt weak while telecommuting.

100. The aforesaid was a total and unreasonable invasion into one's religious practices. Because of their unlawful conduct, Ms. Zaki suffered monetary damages, mental anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

## COUNT III
## NATIONAL ORIGIN DISCRIMINATION

101. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

102. Plaintiff's national origin was a motivating factor for management taking away her telework rescinded for the last two weeks of Ramadan 2017.

103. Defendant's reasons for removing same were pretextual.

104. Defendant treated Plaintiff far worse than Plaintiff's co-workers not in Plaintiff's protected class.

105. Because of their unlawful conduct, Ms. Zaki suffered monetary damages, mental anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

## COUNT IV
## RETALIATION

106. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

107. Defendant's aforesaid conduct after June 13, 2017, through the present was based on Plaintiff's aforementioned discrimination complaints.

108. There is a causal connection to Defendant's aforesaid conduct and said discrimination complaints.

109. Defendant's conduct would objectively and subjectively, reasonably dissuade a Muslim for asking to telework twice a week during Ramadan.

110. Plaintiff's discrimination complaint was a motivating factor in Defendant's actions against Plaintiff.

111. Defendant did not treat Plaintiff's co-workers who did not complain about discrimination the same way Defendant treated Plaintiff.

112. Because of their unlawful conduct, Ms. Zaki suffered monetary damages, mental anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

a. A declaratory judgment that the conduct of the Agency challenged herein was illegal and in violation of the aforementioned laws;

b. Compensatory damages in an amount to be proved at trial, including compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described herein;

c. Reasonable attorneys' fees, expenses, and costs incurred by Plaintiff;

d. Such other and further relief as the Court may deem just.

**REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury on all matters properly tried to a jury.

Respectfully Submitted,

_____
Morris E. Fischer, Esq.
Morris E. Fischer, LLC
DC Bar No. 490369
8720 Georgia Ave. Suite 350
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
Attorney for Plaintiff